IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

JOHN WILLIAM WALKER                                                                  PLAINTIFF

v.                              Civil No. 10-2054

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                                       DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, John Walker, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for supplemental security income ("SSI") under Title XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

I.   **Procedural Background:**

The plaintiff filed his application for SSI on September 15, 2006, alleging disability due to left ankle pain, depression, and a heart attack. Tr. 13, 67-69, 83, 89-90, 107, 116, 119.

An administrative hearing was held on July 8, 2008. Tr. 10-26. Plaintiff was present and represented by counsel. At this time, plaintiff was 37 years of age and possessed the equivalent of a high school education. Tr. 13, 87. He had no past relevant work ("PRW") experience. Tr. 16.   On September 11, 2008, the Administrative Law Judge ("ALJ") concluded that, although severe, plaintiff's osteoarthritis, coronary artery disease, and depression did not meet or equal any Appendix 1 listing. Tr. 34-36. After concluding that Plaintiff's subjective allegations were not entirely credible, the ALJ determined that plaintiff maintained the residual functional

capacity ("RFC") to perform a limited range of sedentary work that does not involve climbing ladders or scaffolds, crawling, or operating foot controls. Tr. 36-41. Plaintiff could occasionally climb stairs and ramps, balance, crouch, stoop, and kneel and was moderately limited in his ability to understand, remember, and carry out detailed instructions, respond appropriately to usual work situations and routine work changes, and interact appropriately with the public. With the assistance of a vocational expert, the ALJ then found that plaintiff could perform work as an assembler, (compact assembler, hot stone setter, and fishing reel assembler), addressing clerk, and call out operator. Tr. 42.

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on February 26, 2010. Tr. 1-3. Subsequently, plaintiff filed this action. ECF No. 1. This case is before the undersigned by consent of the parties. Both parties have filed appeal briefs, and the case is now ready for decision. ECF No. 8, 9.

## II.    **Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id.* "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Id.* As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742,

AO72A
(Rev. 8/82)

747 (8th Cir. 2001). If we find it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, we must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

### A.     The Evaluation Process:

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)-(f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age,

education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. § § 404.1520, 416.920 (2003).

### III.  Discussion:

Of particular concern to the undersigned is the ALJ's failure to find Plaintiff's antisocial personality disorder to be severe. An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities. *See Bowen v. Yuckert,* 482 U.S. 137, 153, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987); 20 C.F.R. § 404.1521(a). If the impairment would have no more than a minimal effect on the claimant's ability to work, then it does not satisfy the requirement of step two. *Page v. Astrue,* 484 F.3d 1040, 1043 (8th Cir. 2007). It is the claimant's burden to establish that his impairment or combination of impairments are severe. *Mittlestedt v. Apfel,* 204 F.3d 847, 852 (8th Cir. 2000). Severity is not an onerous requirement for the claimant to meet, *see Hudson v. Bowen,* 870 F.2d 1392, 1395 (8th Cir.1989), but it is also not a toothless standard, and we have upheld on numerous occasions the Commissioner's finding that a claimant failed to make this showing. *See, e.g.*, *Page*, 484 F.3d at 1043-44; *Dixon v. Barnhart,* 353 F.3d 602, 605 (8th Cir. 2003); *Simmons,* 264 F.3d at 755; *Gwathney v. Chater,* 104 F.3d 1043, 1045 (8th Cir. 1997); *Nguyen v. Chater,* 75 F.3d 429, 431 (8th Cir. 1996).

By definition, antisocial personality disorder is a "pattern of disregard for, and violation of, the rights of others." *See* DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS ("DSM") IV-TR 685, 701 (4th ed. Rev. 2000). Individuals with this disorder fail to conform to social norms with respect to lawful behavior and may repeatedly perform acts that are grounds for arrest such as destroying property, harassing others, stealing, or pursuing illegal occupations.

*Id*. at 702.  They are frequently deceitful and manipulative in order to gain personal profit or pleasure and also tend to be consistently and extremely irresponsible.  *Id*.  These individuals are also prone to a pattern of repeated absences from work that are not explained by illness either in themselves or family.  *Id*.

On March 12, 2007, Plaintiff underwent a mental status diagnostic evaluation with Dr. Kathleen Kralik.  Tr. 187-193.  He stated that he had been on disability in the past, based on his physical issues and limited education.  His benefits were revoked when he was incarcerated; and now, he was reapplying.  When questioned concerning his symptoms, Plaintiff stated that he was depressed sometimes, which he "guessed" was due to stress, and cried at times for no reason.  Before going to prison, a doctor had reportedly advised him that he needed medication for moderate stress.  His symptoms were said to include fatigue and lethargy.  Treatment history included a stay in the Sparks Care Unit in 1985 for court-ordered substance abuse treatment, but no other mental health services, except for a mental evaluation for DHS, were reported.  And, Plaintiff was on no medications and denied a history of psychotrophic use.

Although Plaintiff felt there was something wrong with his processing speed, Dr. Kralik noted his processing speed to be quite good, with the only thing seeming to stump him being his inability to describe his mental symptoms.  Dr. Kralick found no evidence of learning problems and/or significant developmental limitations or delays.  However, he did seem frequently inattentive at times, often requesting that questions be repeated.  Based on a mental status exam, his cognitive functioning overall seemed adequate.  His general fund of information seemed adequate, as did his retrieval of information and immediate memory.  Plaintiff also manifested intermittently generally adequate attention and concentration and a fair to adequate capacity for

5

abstract thinking. His capacity for abstract reasoning was fair, and although he reported his personal judgment to be problematic, Dr. Kralick found it to be fair with regard to the tasks she asked him to perform. She estimated his IQ to be average. Dr. Kralick concluded that his level of functioning with regard to daily adaptive functioning was generally adequate for occupational purposes, his capacity to communicate and interact in a socially appropriate manner seemed mildly impaired, he was able to attend and sustain concentration on basic tasks adequately, his capacity to sustain persistence in completing tasks seemed adequate for occupational purpose, and his capacity to complete work-like tasks within an acceptable time frame seemed adequate. When considering whether or not he seemed to have a medically determinable mental impairment, Dr. Kralick stated other than a history consistent with antisocial personality and behavioral features, no other cognitive/mental issues seemed evident. She also concluded that Plaintiff really provided no supporting description of symptoms consistent with mood or anxiety disorder to show the degree of limitation that his alleged depression imposed on his ability to engage in gainful occupational pursuits. To her, he seemed more bored and unmotivated than depressed.. She also noted that Plaintiff stressed his physical limitations and his perception that he lacked the training or skills to do alternative types of labor more so than any mental/cognitive issues. Dr. Kralik did believe Plaintiff's antisocial/behavioral issues were longstanding and that his polysubstance abuse/dependence issue would remain an ongoing risk. She diagnosed him with polysubstance dependence in sustained full remission, antisocial personality disorder, and assessed him with a global assessment of functioning ("GAF") between 41 and 50. No evidence of malingering and/or exaggeration seemed evident. Tr. 187-193.

AO72A
(Rev. 8/82)

In spite of her diagnoses, Dr. Kralick was not asked to complete a mental RFC assessment. The only RFC assessment of record was completed by Dr. Kay Gale, a non-examining, consultative psychologist who merely reviewed Plaintiff's medical records. Tr. 196-213. *See Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir. 1999) (holding that the opinion of a consulting physician who examined the plaintiff once or not at all does not generally constitute substantial evidence). We note that Kralick's report does not make clear how Plaintiff's antisocial personality disorder would impact his ability to perform all work-related activities. *See Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) (holding that ALJ must seek additional clarifying statements from a treating physician when a crucial issue is undeveloped). Of particular concern would be his ability to work in close proximity to others without distracting them or exhibiting behavioral extremes, complete a normal workday and workweek without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; maintain socially appropriate behavior; perform activities within a schedule; maintain regular attendance; be punctual within customary tolerances; and, adhere to basic standards of neatness and cleanliness. She did, however, assess him with a GAF of 41-50, which is indicative of serious symptoms or a serious impairment in social, occupational, or school functioning. *See* DSM-IV-TR at 34. Certainly, this level of impairment would amount to more than a slight abnormality that would significantly limit the claimant's physical or mental ability to do basic work activities. Accordingly, we believe that remand is necessary to allow the ALJ to reevaluate the evidence concerning Plaintiff's antisocial personality disorder, obtain a mental

RFC assessment from Dr. Kralick, and to reconsider Plaintiff's RFC in light of Dr. Kralick's RFC assessment.

Given the nature of antisocial personality disorder, as described above, it also seems clear to the undersigned that Plaintiff's history of drug abuse (which Dr. Kralick felt would be a long standing issue) and incarceration could be related to his mental impairment, an issue not considered by the ALJ. *See* DSM-IV-TR at 702. Thus, on remand, the ALJ should also develop the record with regard to any possible connection between Plaintiff's impairment and his behavior. Specific questions should be posed to Dr. Kralick to determine the existence of a connection and how Plaintiff's antisocial personality disorder might impact his future behavior both occupationally and socially.

## IV. Conclusion:

Accordingly, we conclude that the ALJ's decision is not supported by substantial evidence and should be reversed and remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

DATED this 22nd day of March 2011.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)